561 P.2d 36

**Manuel D. GRIEGO, Individually, and as Administrator of the Estate of Arthur Griego, Deceased, Plaintiff-Appellant,**

v.

**A. J. GRIECO and Cibola General Hospital, Defendants-Appellees.**

No. 2582.

Court of Appeals of New Mexico.

Feb. 15, 1977.

Certiorari Denied March 15, 1977.

Lorenzo A. Chavez, Emmett C. Hart, Albuquerque, for plaintiff-appellant.

Bruce D. Hall, Rodey Dickason Sloan Akin & Robb, P. A., Albuquerque, for defendant-appellee A. J. Grieco.

Charles T. Hooker, Albuquerque, for defendant-appellee Cibola Gen. Hospital.

## OPINION

SUTIN, Judge.

Plaintiff appeals a summary judgment granted defendants based upon two findings:

1. That the testimony of Dr. Thomas Wachtel is not competent to establish the applicable standard of care or breach thereof by the defendant, A. J. Grieco, or the defendant, Cibola General Hospital.

2. That there is no genuine issue of material fact and the defendant, A. J. Grieco and the defendant, Cibola General Hospital, are entitled to judgment as a matter of law in their favor . . ..

We reverse as to Grieco and affirm as to Cibola General Hospital.

### A. *Dr. Thomas Wachtel was competent to testify.*

Plaintiff charged that defendant Grieco failed to properly diagnose, care for and treat plaintiff's decedent for peritonitis in Grants, New Mexico. Grieco took the deposition of Dr. Wachtel. After taking Dr. Wachtel's deposition, Grieco moved the court, *in advance of trial,* for an order of court excluding the testimony of Dr. Wachtel "insofar as said witness' testimony is offered to establish plaintiff's allegation that Defendant A. J. Grieco departed from accepted standards of skill and care in the treatment of Arthur Griego, Deceased."

The motion was sustained in conjunction with the granting of summary judgment on April 9, 1976.

Dr. Wachtel is a well qualified general surgeon—an expert in his field. On December 3, 1975, Dr. Wachtel was questioned as follows:

Q. . . . Do you know what G.P.'s [general practitioners], on an average, do in terms of treating a trauma patient in an emergency room in one of our smaller New Mexico communities? Do you know what procedures they go through; what type of history they take?

A. No.

Q. To what extent they admit for observation and don't admit for observation?

A. No, sir.

It is upon this testimony that Grieco contends Dr. Wachtel would be *incompetent to*

testify at trial as to the applicable standard of care.

It does not require mental agility to state that lack of knowledge on December 3, 1975 may be superceded by knowledge at the time of trial during the year 1977.

Grieco's motion was not filed in support of Grieco's motion for summary judgment. The motion was filed to protect Grieco at trial. At the time of trial, Dr. Wachtel could, by making inquiry, answer the above questions "yes." Grieco noted that Dr. Wachtel would be permitted at trial to testify on medical matters within his expertise, and that the ruling of the court was limited to this critical point: Is he competent to establish the standard of care required of Dr. Grieco? The time to determine the answer to this question is when Dr. Wachtel testifies at the time of trial.

The trial court erred in ruling that Dr. Wachtel was not competent to establish the applicable standard of care or breach thereof by Grieco.

B. *Plaintiff has appealed from the orders limiting discovery.*

■ Grieco contends that plaintiff has not appealed from the orders of the court relating to his oral interrogation.

On November 1, 1974, plaintiff took the deposition of Grieco, and after two hours of examination, plaintiff recessed because of numerous objections made to questions and instructions to Grieco by his attorney not to answer certain questions. Plaintiff moved the court to compel answers to permit a full and complete discovery. The motion was granted as to questions appearing on ten pages of the deposition.

On October 11, 1975, plaintiff was again limited. Plaintiff again filed a motion requesting an order and the motion was denied.

Plaintiff's notice of appeal states in pertinent part:

. . . [P]laintiff . . . files herewith his Notice of Appeal . . . . This appeal is taken from that certain judgment granting Summary Judgment

in favor of the defendants . . . and determining and ordering that the testimony of Dr. Thomas Wachtel was not competent . . ., which judgment was filed herein on the 9th day of April 1976.

Rule 4(b) of the Rules of Appellate Procedure in civil cases [§ 21–12–4(b), N.M.S.A. 1953 (Repl. Vol. 4, 1975 Supp.)] reads:

The notice of appeal shall designate the party or parties taking the appeal, the judgment, order, decision or part thereof appealed from, and the court to which it is taken.

Grieco relies on *Mabrey v. Mobil Oil Corporation,* 84 N.M. 272, 502 P.2d 297 (Ct.App. 1972). In this case, we held that defendant's notice of appeal from a judgment entered in favor of plaintiff did not constitute notice of appeal from a summary judgment granted Sparger, a third-party defendant, after the summary judgment had become a final appealable order. This case does not support Grieco.

Orders entered on procedural motions that do not practically dispose of the case on the merits are not appealable. Section 21–12–3(a)(2), N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.). Plaintiff could not appeal from the orders limiting discovery. See generally, Annot., Appealability—Pretrial Examination, 37 A.L.R.2d 593, §§ 4 and 8 (1954); 4 C.J.S. Appeal & Error § 120 (1957, and 1976 Poc. Pt.); 4 Am.Jur.2d Appeal & Error § 79 (1962, and 1975 Supp.). The errors raised are properly before this Court on the appeal of the summary judgment.

C. *The trial court erred in limiting discovery during deposition of Grieco.*

Grieco was a defendant. He was subject to examination in aid of plaintiff's pending action. His deposition is important to plaintiff in opposition to defendant's motion for summary judgment.

The scope of the examination is set forth in Rule 26(b) of the Rules of Civil Procedure [§ 21–1–1(26)(b), N.M.S.A.1953 (Repl. Vol. 4)]:

Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 30(d), supra, reads:

At any time during the taking of the deposition, *on motion of any party or of the deponent* and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending . . . may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in subdivision (b). . . . [Emphasis added]

No such motion was filed.

The attorney for Grieco continually objected in various ways to the form of the question with comments and at times directed Grieco not to answer. He led Grieco to answers of questions that Grieco did not understand. He objected after answers were given. He tried to clear the record by comments. He answered questions that were asked the witness. When the witness was asked to answer the question, the attorney said "If you can". He coached the witness. He did not allow opposing counsel to finish questions. Grieco asked his attorney: "Now, how do I answer that, Mr. Farlow?" "Mr. Farlow, isn't he asking the same question over and over, am I required to answer?" "Is that a proper form of question, Mr. Farlow?"

Plaintiff recessed the deposition after two hours of questioning because of the conduct of opposing counsel.

Upon motion of plaintiff, the trial court limited the examination of Grieco to the subject matter of questions that appeared on ten pages of the deposition and ordered that the examination shall not extend beyond those questions. We find no rule of law, and none has been presented, that allows a district court to limit the examination of a witness, absent a motion by the opposing party pursuant to Rule 30(b) and (d).

*Salitan v. Carrillo,* 69 N.M. 476, 368 P.2d 149 (1961) holds that under Rule 30(b) a party to be deposed may seek a protective order. For good cause shown, the court may in its discretion, enter any orders which justice requires to protect the party from annoyance, embarrassment or oppression. *Salitan* is not applicable because Grieco, in the instant case, did not seek any protection under Rule 30(b) or (d). On the other hand, plaintiff sought relief, not under Rule 30(b) or (d), and not to limit Grieco's testimony. Plaintiff's purpose was to examine Grieco upon all matters relevant to the subject matter. The trial court lacked discretionary authority to limit the examination.

Under Rule 26(b), plaintiff may examine deponent "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action". As to all issues made by the pleadings in this case, plaintiff had the right to examine Grieco fully and exhaustively. "Such a right is basically fundamental to our system of jurisprudence and no court has power to restrict or limit it." *Northwestern University v. Crisp,* 211 Ga. 636, 88 S.E.2d 26, 31 (1955). In fact, our rules do not forbid plaintiff to retake the deposition of Grieco. However, the use of repetitious depositions rests in the sound discretion of the trial court. *Turner v. Missouri-Kansas-Texas R. Co.,* 346 Mo. 28, 142 S.W.2d 455 (1940).

Prior to the taking of the deposition, the attorney for a deponent may ascertain, as a guide to his examination, what the deponent knows and the extent and limitation of his memory, but he does not have the right to go beyond proper objection. If necessary, he can seek relief from the court pursuant to Rule 30(b) and (d), supra.

During the taking of a deposition, the attorney for the deponent has the right to object to questions asked and state his reasons, without comment, to protect the rights of the deponent. But he should not continuously object to questions asked that are relevant to the issues in the case on insubstantial grounds, nor teach the deponent what he ought to know, nor suggest and dictate answers to the deponent, nor wrongfully interfere with the progress of the deposition. Under our rules authorizing the taking of depositions, it is equally necessary to ensure the due administration of justice and the proper protection of the rights of the parties. See *Pratt v. Battles,* 34 Vt. 391 (1861); *In Matter of Eldridge,* 82 N.Y. 161, 37 Am.R. 558 (1880); 26A C.J.S. Depositions § 67, at 392 (1956).

The trial court erred in limiting the examination of Grieco. Plaintiff has the right to proceed further in the examination of Grieco upon giving proper notice. This error may have some effect upon the summary judgment granted Grieco.

D. *A genuine issue of material fact exists as to Dr. Grieco.*

The important issue in this case is whether a genuine issue of material fact exists in the legal medical battle between plaintiff and Grieco. We believe there is.

The facts most favorable to plaintiff are:

On the evening of August 9, 1973 in Grants, New Mexico, Arthur Griego (decedent), 17 years of age, was injured while riding a motorcycle. He was taken to Cibola General Hospital and was first seen by Dr. Grieco about 10:30 p. m. that evening. Decedent suffered a fracture of the left wrist, and multiple lacerations and abrasions of the abdomen. There was a loss of superficial skin tissue over the middle part of the abdomen. This is called "blunt trauma," trauma caused by a blow to the abdomen. Traumatic injury to the abdomen is common.

Decedent had a very serious problem the moment he was injured. He was critically ill because the rupture of the hollow viscus had probably occurred. With each passing hour, the condition got worse; that is, the prognosis changed for the worse as the operative treatment was delayed. The earlier the operation for this suspected problem, the better it would have been for the decedent.

An x-ray of the abdomen is a routine order of a physician who suspects that a person has suffered an abdominal injury. If an upright x-ray is taken of a patient or one is taken on his side, it will disclose whether a large amount of free air is in the abdomen, evidence of a ruptured colon. If an examination of the abdomen discloses the rupture, the rupture must be treated operatively in the first twelve hours because peritonitis sets in. Bacteria from the area of the colon sets in motion.

Grieco examined decedent's blood pressure, blood count, heart, abdomen, eyes and rectum, and ordered x-rays taken. The specific kind of examinations made of the abdomen that night and the next day are not too clear. It is most important to watch very closely by examination the development of the injury to the abdomen. There are various methods of determining whether an intra-abdominal injury was present. X-rays were taken that night of the right shoulder, the chin, stomach, chest and left wrist. X-rays of the abdomen were not ordered because Grieco believed he had no suspicion that decedent had a ruptured hollow viscus, an intra-abdominal injury. This would, of course, depend on the method of examination of the decedent.

It does not appear from the record whether Grieco continued to lack suspicion on August 10 and 11, 1973 that decedent suffered an intra-abdominal injury. Nevertheless, no x-rays of the abdomen were ordered on the two days following the decedent's entry into the hospital.

On August 12, 1973, Grieco did order an x-ray of decedent's chest. It disclosed about a half inch of free air in the abdomen. The right side of the transverse colon had been completely ruptured. Peritonitis had set in. Grieco notified a surgeon in Albuquerque of the patient's condition and rushed the patient to an Albuquerque hospi-

tal for surgery. He was operated on four occasions and subsequently expired.

In support of his motion for summary judgment, Grieco, on *December 9, 1975,* filed an affidavit of Dr. G. R. Gutierrez of Grants, New Mexico, stating that Grieco followed the customary and standard procedures in Grants, New Mexico.

On *January 2, 1976,* the deposition of Dr. Gutierrez was taken. He testified that the fundamental techniques of diagnosis and treatment of an abdominal injury would be the same whether practiced in Albuquerque, Grants or New York. According to Dr. Gutierrez, when abdominal trauma is suspected, abdominal x-rays should be taken. He further testified that if an accident victim with scrapes and bruises on his abdomen were brought in for treatment, it would indicate some blunt trauma to the abdomen; that a physician would watch for intra-abdominal injuries; that one of the diagnostic procedures would be to take an x-ray of the abdominal region.

Dr. Gutierrez' testimony alone would create an issue of fact whether Grieco violated the applicable standard of care in Grants, New Mexico. True, it was inconsistent with his affidavit. However, where a conflict arises in statements made by a witness in an affidavit and deposition on a material fact, summary judgment is improper. *Rodriguez v. State,* 86 N.M. 535, 525 P.2d 895 (Ct.App.1974).

To meet the burden of establishing the facts set forth supra, plaintiff also presented the depositions of Drs. Grieco, Thomas Wachtel, and John P. O'Reilly, the surgeon who operated.

Dr. Wachtel testified that the diagnosis of abdominal injuries was taught in medical schools for many, many years, was of long standing, and the method of diagnosis did not vary from town to town in New Mexico. Dr. John P. O'Reilly testified that diagnostic tests and examinations would be the same in any community in New Mexico.

U.J.I. 8.1 sets forth the conceptual method by which a medical standard of care is established:

In (treating) . . . (making a diagnosis of) the plaintiff, the doctor was under the duty to possess and apply the knowledge and to use the skill and care that was ordinarily used by reasonably well qualified doctors of the same field of medicine as that of the defendant practicing under similar circumstances, *giving due consideration to the locality involved.* A failure to do so would be a form of negligence that is called malpractice.

The only way in which you may decide whether the defendant possessed and applied the knowledge and used the skill and care which the law required of him is from evidence presented in this trial by (physicians) (surgeons) . . . testifying as expert witnesses. . . . [Emphasis added]

The testimony of all of the doctors which establish the facts stated supra, shows that they did "give due consideration to the locality involved." The doctors were qualified to testify whether Grieco followed the standard of care and skill required of physicians in examining, diagnosing and treating a patient suffering from "blunt trauma" to the abdomen to determine whether an intra-abdominal injury was present. See *Goffe v. Pharmaseal Laboratories, Inc.,* No. 2480 (Ct.App.), decided December 7, 1976 (Sutin, J., concurring in part and dissenting in part), cert. granted January 7, 1977; *Gandara v. Wilson,* 85 N.M. 161, 509 P.2d 1356 (Ct.App.1973).

Grieco suggests consideration of *Murphy v. Dyer,* 409 F.2d 747 (10th Cir. 1969). This Federal court was bound by the rules of the State of Colorado. To determine whether an expert was qualified, it must be shown that the expert was familiar with standards of practice and techniques employed in Colorado Springs or similar communities. Defendant was a certified obstetrician and gynecologist. The expert witness was a renowned anesthesiologist. Although the expert testified that while the " 'standard practice in one community may *vary* to another community * * * ' 'the general principal [sic] of administering [a spinal an-

**180**

esthetic] are generally adhered to and fairly well established.'" [Emphasis added] [409 F.2d at 749]. The Court applied the Colorado locality doctrine and then stated:

> Likewise the plaintiff made no showing that the standards of administering a spinal anesthetic would be the same for a certified obstetrician as for a certified anesthesiologist. . . . [409 F.2d at 749]

This case does not support Grieco's contention. The standard varied from one community to another, and the expert did not prove the proper standard applicable to defendant.

■ A genuine issue of material fact exists on whether Grieco's failure to diagnose the intra-abdominal injury of decedent and failure to order x-rays of the abdomen to determine whether an intra-abdominal injury was present met the recognized standard of care required of a physician.

E. *No genuine issue of fact exists as to hospital.*

Plaintiff does not contend on appeal that a genuine issue of material fact exists as to Cibola General Hospital, and we find none.

Oral argument is unnecessary. Summary judgment in favor of Grieco is reversed. Summary judgment in favor of Cibola General Hospital is affirmed.

IT IS SO ORDERED.

WOOD, C. J., and HENDLEY, J., specially concurring.

WOOD, Chief Judge, and HENDLEY, Judge (specially concurring).

We agree with the result reached by Judge Sutin on all issues and join in Part E of his opinion. On other issues, we reach the result somewhat differently.

*Locality Rule and Dr. Wachtel*

The locality rule stated in U.J.I. Civil 8.1 states that in determining malpractice the fact finder is to give "due consideration to the locality involved." This instruction, in our opinion, differs from the standard stated in *Cervantes v. Forbis,* 73 N.M. 445, 389 P.2d 210 (1964)—departure from "the recognized standards of medical practice in the community".

The difference in the instruction approved by the Supreme Court and the definition in *Cervantes* was pointed out in *Gandara v. Wilson,* 85 N.M. 161, 509 P.2d 1356 (Ct.App.1973). The difference was discussed by Judge Sutin in his separate opinion in *Goffe v. Pharmaseal Laboratories, Inc.,* (Ct.App.) No. 2480, decided December 7, 1976, certiorari granted January 7, 1977.

We agree with the views stated by Judge Sutin in *Goffe*—that U.J.I. Civil 8.1 is the appropriate standard. We do not agree with Judge Sutin's comment in *Goffe* that U.J.I. Civil 8.1 was approved in *Williams v. Vandenhoven,* 82 N.M. 352, 482 P.2d 55 (1971). As we read *Williams,* there was no appellate issue in that case concerning the locality rule. The Supreme Court's latest decision on the locality rule followed *Cervantes* and did not discuss U.J.I. Civil 8.1. *Becker v. Hidalgo,* 89 N.M. 627, 556 P.2d 35 (1976).

Judge Sutin's opinion in this case follows U.J.I. Civil 8.1 rather than *Cervantes.* In our opinion, it makes no difference which locality rule is followed in deciding this case; under either rule there was an issue of fact. There is an issue of fact as to whether Dr. Grieco was late in considering whether there was a ruptured viscus. The question of lateness arises from the deposition testimony of several physicians as to fundamental diagnostic techniques. Accordingly, we do not consider nor join in the extensive factual references favorable to plaintiff in Part D of Judge Sutin's opinion. Because of the opinion as to fundamental techniques, applicable no matter where the doctor practices medicine, there was a factual issue under either locality rule.

■ With the other deposition testimony, it makes no difference whether Dr. Wachtel had personal knowledge concerning local practice. Fundamental techniques, applicable no matter where the doctor practices, would apply to the locality involved in this

 

lawsuit. We do not disagree with Part A of Judge Sutin's opinion; however, the ruling excluding Dr. Wachtel's testimony at trial was also erroneous for the reasons stated in this paragraph.

*Limiting Discovery*

We agree that the trial court erred in limiting the second deposition of Dr. Grieco to the subject matter of questions appearing on specified pages of the first deposition. Other pages of the first deposition show instances where Dr. Grieco's attorney intervened to avoid a question being answered.

 Our deposition rules intend a liberal pretrial discovery to enable the parties to obtain the fullest possible knowledge of the facts before trial. See 4 Moore's Federal Practice (2nd ed.) ¶ 26.56. A trial court's decision to limit discovery will not be disturbed except for an abuse of discretion, however, the presumption is in favor of discovery. *Salitan v. Carrillo,* 69 N.M. 476, 368 P.2d 149 (1961). The conduct of Dr. Grieco's attorney during the taking of the first deposition thwarted the intent of the discovery rule and prevented plaintiff from obtaining knowledge of at least some of the facts. In this situation, it was an abuse of discretion to limit discovery in the second deposition to questions appearing on specified pages of the first deposition.

The remedy for this improper limitation is to allow plaintiff to depose Dr. Grieco again. While this result accords with the result of Judge Sutin, we do not join in Part C of Judge Sutin's opinion because it would hold that the trial court is powerless to limit discovery unless a party moves that a limitation be imposed. In appropriate circumstances the trial court may act sua sponte. See *Smith v. Walcott,* 85 N.M. 351, 512 P.2d 679 (1973); *Birdo v. Rodriguez,* 84 N.M. 207, 501 P.2d 195 (1972); *Miller v. City of Albuquerque,* 88 N.M. 324, 540 P.2d 254 (Ct.App.1975); *Beverly v. Conquistadores, Inc.,* 88 N.M. 119, 537 P.2d 1015 (Ct.App.1975).

*Appeal of Orders Limiting Discovery*

Part B of Judge Sutin's opinion discusses defendant Grieco's contention that the trial court orders limiting discovery were not appealed because not designated in the notice of appeal. Judge Sutin holds that the limiting orders are before this Court for review by the appeal from the summary judgment because the limiting orders were not appealable. This is subject to misinterpretation.

Defendant does not claim that rulings on procedural matters cannot be reviewed in an appeal from a summary judgment when an independent appeal cannot be taken on the basis of the procedural ruling. The claim is: "Assuming that the two orders complained of are appealable, they are before this Court only if included within the notice of appeal." Judge Sutin correctly holds that the orders were not appealable orders. The corollary is that not being appealable orders, the rulings may be reviewed in the appeal from the summary judgment.